May it please the Court, Yakov Roth on behalf of Defendants. I'm going to try to save a few minutes for rebuttal. I'll watch the clock to make sure that happens. Your Honors, the first thing I want to say is this is not a case where an agency is terminating an entire program or where an agency doesn't want to spend the money that Congress has appropriated for a particular purpose. The Department of Education is committed to these grant programs and wants to make awards consistent with the statute. The agency simply decided that as to a subset of the awards that had been made in prior years, that those awards should not be continued into 2026. And instead, the agency set up a new competition, went through notice and comment to do that, all the steps that are necessary in order to set up and select new projects and new grantees for 2026 and beyond. And our position is that is entirely lawful and should be allowed to proceed. Counsel, but that's not your argument here today. You're not asking us to say that this is a rational approach and it's therefore not arbitrary and capricious. You've told us that we can't even think about this. That's correct, Your Honor. The reasons why it's lawful are that the agency has the discretion to make these decisions as to which projects are in the interest of the federal government. That decision is not reviewable under the APA for two reasons, and this gets us into the merits of why we think we're likely to prevail on the merits of these claims. And the first reason is the Tucker Act and implied preclusion under the Tucker Act. And we do think that the Supreme Court's stay orders in NIH and California are controlling here. The same claims that the plaintiffs are asserting here, to be specific, arbitrary and capricious claims under the APA challenging the end of this contractual relationship, are the claims that were at issue in the Supreme Court in those two cases. And the Supreme Court held or ruled in the context of those stay motions that those were disguised contract claims that have to be pursued under the Tucker Act in the Court of Federal Claims. Mr. Roth, let me ask this. The California case involved the termination mid-year of a grant in a district court order, ordering the resumption of payment and continuation of payment. And I know there's a dispute between the parties as to whether any money would change hands as a result of the injunctive order, but let's assume for the moment that it wouldn't. Isn't that sufficiently distinct from California to take it out of the Tucker Act realm? I don't think so, Your Honor, because I think the only difference is the termination date, right? So in NIH and in California, the agencies terminated effective immediately. And the question was, can the plaintiff grantees go into court and get an injunction setting aside that termination and reviving the contract going forward? Here, Department of Education sent out these notices in April, and it gave the parties eight months heads up. You know, we're not going to continue these into 2026. So it set the termination date in the future. But the dispute is the same. Can they come into court and say, no, we wanted to continue past the date when you've said it's going to end? And the reasons that they've given for challenging that termination of the relationship are you didn't explain it enough. You didn't consider reliance enough, essentially the same reasons that the plaintiffs in NIH and California gave in their case. And the Supreme Court said, you know, that's not any different from a contract claim. You're saying you want the contract to continue past the date at which the agency has said it won't continue. And so I don't really see a difference. Mr. Roth, as I understand it, the department is continuing to pay the grantees through the end of this year. Is that right? That's correct, Your Honor. And you made reference in your reply brief to some $200 million that had been appropriated for these grants that has not been spent. Is that separate money from the money that is continuing to be paid to the grantees who bring this case? Yes. That's an amount of money that hasn't been obligated. So then that gets to the timing. Like, why are we here right now asking for a stay? We're here right now asking for a stay because we've said that these grants should end at the end of December. And we have a large sum of money that Congress has appropriated for grants for this purpose that expires at the end of December. And so we need to know, are we using that money to fund the new grantees and the new projects that have been selected from the new competition that the department ran? Or are we going to be forced to use that money to perpetuate the old awards that the secretary has decided are not in the best interest of the federal government? Where is it in the record that you can't do both? Have you repurposed the money in theory to an entirely new crop of grantees where you would be unable to do both things? Well, we haven't re-obligated money at all because the injunction doesn't allow us to reprogram the funds at all. So right now, everything is kind of frozen. Let me be more specific about the question. You said the reason why we're here now is because there's a pot of money and it would expire by the end of the year. And so we have to decide who we can give the money to. But I haven't heard whether there's anything in the record that would say that entire pot of money is already intended to go to another set of grantees or not. Is there anything in the record that suggests that? Well, no, Your Honor, because we haven't selected the new grantees yet. So we've done a competition. We've taken in the applications. The department is ready to make grants and awards that would use up the money, but they haven't been able to do that because of the injunction. The injunction says you can't reprogram the funds. If we were to fully fund the plaintiff grantees for 2026, we're talking in excess of $100 million. So it wouldn't necessarily consume all of the $200 million, but a very large amount of it would be dedicated to funding the grantees in these plaintiff states. And so that's why we can't use the same money for two purposes. And that's why we're sort of coming to the court and saying we need resolution of this relatively quickly because we need to be able to parcel this out in an orderly fashion before the end of the year. What if we modified the injunction so that you could spend the $200 million that's currently unallocated but freeze the other $100 million that's going to be spent by the end of the year? Is that what you're saying? Is that going to come out of the $200 million or from the pot that Congress originally appropriated? The money that we're already paying through the end of the year is not part of the $200 million that I'm referring to because that's already been obligated to these grantees. Nobody's trying to claw that back. If the court were to stay the injunction in part to allow the department to make awards to the new grantees, that would be fine. I think plaintiffs will tell you the problem with that is that there may not be money left for them when this litigation reaches its end point. And so that's why we're not solely raising an equitable argument here. We are saying we're going to win this case both on Tucker Act grounds and then I would also address the committed to agency discretion point that I think is a separate reason why the preliminary injunction won't withstand review on the merits. I'm happy to pivot to that. Let's stick with breach of contract for the moment. Where does the discontinuation notice reflect that the grantee breached the term of the grant award as a basis for discontinuing the award? In other words – We're not claiming they breached. You're not saying that they breached. No, no, no. We're not claiming they breached. They're claiming we breached. But if there's a breach of contract claim, I guess I would expect to see something a little bit more specific about the grantee's performance or conduct or something that would suggest we're not going to continue this grant award with you for X reasons. That would seem to be what sounds in the nature of a breach of contract claim as opposed to what plaintiffs seem to be alleging, which is more APA related. The department has issued – has come up with new priorities that they haven't gone through notice in rulemaking. This is forward-looking. We're not stopping the exchange of money. We are just trying to prevent the department from doing something that is contrary to the regulations before they discontinue our awards. There's a lot in there, Your Honor. I may not remember to touch everything you hit on. To be clear, though, when we say that a claim is fundamentally contractual for purposes of Tucker Act preclusion, what we mean is the plaintiff's challenge to the termination sounds in contract. In other words, the plaintiffs are saying, you, the government, had a contract with us. You are terminating it, and you're not allowed to terminate it under the APA or some regulation that deals with termination. That's the same scenario that the Supreme Court dealt with in NIH and said, yeah, that's contractual because your rights are coming from the contract, and what you want is a continuation of the contract. Therefore, it's fundamentally a contract claim that you bring in. Why aren't there rights in the statute? So, Your Honor, the only statute that they're invoking here is the APA, and the APA is the statute that says no relief is available. The APA can't create a – it creates a cause of action for review, but the rights come from a statute that creates a program that DOE has adopted a series of regulations, including what the grounds will be for termination. It relates to data. It relates to administration. It relates to equity issues and a catch-all that says – and for any other reason that we think is in the interest of the United States. Right. So, Your Honor, if there was a statute that they were invoking that they said we breached, then we could argue about whether that is a separate source of rights, and sometimes it is. They're not claiming we breached a statute, and the district court didn't find we breached a statute. The district court said only that it was arbitrary and capricious because we didn't give enough of an explanation. That's an APA claim of the exact same sort as in NIH. Now, plaintiffs in their brief also say, well, you also breached regulations. That's not what the district court said, but plaintiffs have said, look, you have these regulations that say how you're supposed to do these non-continuation awards from one year to the next, and we think you didn't follow those regulations. That is a type of claim that the D.C. Circuit has held for decades is precluded by the Tucker Act because all of the regulations are incorporated into the contract, and they're not really separable. So it's not like you're saying, look, I have a separate independent right under the regulations. The regulations are just directing the agency as to when and where it can terminate, and that is still a contractual claim at root. So I would cite, Your Honor. What do we do with the fact that this is denominated a grant and not a procurement contract? So procurement contracts are governed by a separate section, 1491B, that we haven't invoked. 1491A is the general contract provision of the Tucker Act. But the Grant Act does provide sort of three buckets into which things get classified, gives agencies some discretion as to how they classify things, and DOE chose to do this by a grant and not by a contract. So as I read the cases, especially out of the Court of Federal Claims, the fact that it's a grant suggests that there is a presumption against a damages action unless you can show that there is something that contemplates the payment of damages. Can you point to anything in the language of the grant? I would look for something very specific that contemplates damages. I'm not sure, Your Honor, because plaintiffs have never made that argument, not in the district court, not in this court. It's not in the opinion below, and so I don't think that argument is really preserved on their side. I would also say the grants that we're dealing with here are the same types of grants that were at issue in NIH, and the respondents at NIH did make that argument to the Supreme Court, and it was not successful. So I think we may just have a different reading of the Federal Circuit case law, but it hasn't been briefed in this case. I'm not really prepared to address it at much length other than to say I know that that issue was raised in NIH and did not prevail. Counsel, I'm not— Your argument—oh, go ahead. I'm just going to add one thing. When you get to the briefing on the merits, it would really be useful to me if you would address the Grants Act and what the act of the classification would do, but that's for a merits brief. You can, Your Honor. My question is probably merits-based as well, but I was wondering, it sounded to me like you were alleging that the plaintiffs were pursuing an anticipatory breach of contract theory. In other words, the department is still continuing to pay money under the existing grants, but they fear in light of the letter that DOE sent in April that they're not going to be renewed for 2026. And therefore, they are anticipating that the DOE will breach its contractual obligations under the grant. I think that's an interesting way of looking at it, Your Honor. It's anticipatory in the sense that the non-continuation letters gave a future date for when the end of the relationship would happen, right? The letters went out in April, and they said at the end of this year, you're not going to be renewed for 2026. So that is, I guess, whether you think of the breach as happening in April or in December, I'm not sure it affects the outcome of the case, but it is the same nature of claim that was at issue in the precedents that we're relying on. I do want to try to say a word about the discretion, committed-to-agency discretion point, because if the court has any issues with the Tucker Act argument, I think it was separate, completely independent, and dispositive flaw in plaintiff's claims is the committed-to-agency discretion by law exemption under the APA. This is a lump sum appropriation, and under Lincoln v. Vigil, when the agency is deciding how to allocate funds within that lump sum appropriation, there's no room for arbitrary and depreciation. Counsel, that seems to me to be a pretty aggressive over-reading of Lincoln. Lincoln was any kind of program. The program itself was created by the agency. It was not specified by the Act itself. Here, you have a program that is created and funded. There's a good deal of discretion to the agency into how they structure the program, but they know that they're going to have a program, and you just told us the DOE is committed to continuing it. Sure, and, Your Honor, in Lincoln as well, there were constraints on what the agency could do with the money. Now, maybe they weren't drawn in exactly the same place as the constraints here, but there are always constraints in the statute. Yeah, but the constraints in Lincoln weren't even close. The lack of constraints in Lincoln aren't even close to the question that we've got here. Well, what I will say, Your Honor, or what I would add is the plaintiffs don't claim that the statute has any sort of meaningful standard that would allow for judicial review. They pivot to the regulations. So in their brief, they say, oh, no, no, you can review this because the regulations have enough meat there to tell you how to apply it. But the language in the regulations is incredibly discretionary. Determination from the secretary that continuation of the project is in the best interest of the federal government, that is very similar to the language in Webster v. DOE that the Supreme Court said. Counsel, can you give me, can you think of another case? I don't have anything in mind. Can you think of another case in which an agency has created the discretion that exempts it from the APA by adopting it in its regulations? That's a self-help provision that if we're successful, that every agency ought to be including. I've never seen a case like that. If you can give me one, I would really appreciate it. Yeah, not off the top of my head, Your Honor, but what I will say is we're not trying to create the discretion. What I'm saying is I don't think the plaintiffs have pointed to anything in the statute that meaningfully constrains the discretion as relevant here. They've pivoted to the regulations, and I don't think the regulations give them anything either. Right, but in general, agencies are bound by their own regulations. So if the agency said we're going to do X, Y, and Z, and it failed to do that ordinarily under APA review, we could say, well, this action was arbitrary and capricious because you didn't do what you promised to do. Absolutely, Your Honor, but we're not talking, again, the district court didn't find that there was some procedure we promised to undertake and didn't. All the agencies, all the district court said was you didn't sufficiently explain why this wasn't in the best interest of the United States. You may well win this case on the merits, but you didn't argue the merits and the alternative to the district court. So we're sort of stuck with the jurisdictional problems, and you'll just have to fight with the district court over the arbitrary and capricious part. Again, which you may well win, but you've thrown your hat into the, you know, we can't even think about this realm. I do think that the committed to agency discretion here is dispositive, and yes, we could argue that we gave enough of an explanation. But frankly, the explanations were not individualized, right? And that's what the district court said. You sent the same letter to 200 grantees. That's not good enough. And that's an argument on the merits as to why it's not arbitrary and capricious because you had reasons for doing it, and it applied to all of the grants. That would be a good argument as to why it's not arbitrary and capricious. But I don't see out of Heckler v. Cheney, I don't see out of Webster v. Doe where you have a statutory, where you have a statute in place that either confers some kind of discretion on the agency, as in Webster v. Doe, or that it is structured in a way that the agency is simply imbued with the power to set its own agenda, as in Heckler v. Cheney. And I've never seen, and I certainly would be interested if you can come up with that, I've never seen an agency that could create, exempt itself from the APA by putting in a public interest question. Well, Your Honor, I understand. But what we do have is a lump sum statutory appropriation that doesn't tell us how we have to allocate the funds. And then we have very detailed regulations that are incorporated into the contracts that say we're not going to continue it for subsequent years unless the Secretary makes a determination that it's in the best interest of the federal government to continue it. And that determination did not happen here. And all we want is to enforce that very simple requirement that's in both the regulations and the contracts. Mr. Roth, let me, before we end with you for now, the balance of equities. If we were to construe the district court's injunction, preliminary injunction, as just freezing any repurposing but not exchanging any money or requiring any order to pay money, what is the government's irreparable harm then? Well, Your Honor, the problem is, as I said, the money, a large amount of money expires on December 31st. So what I expect is going to happen if we don't get a ruling from this court that addresses some of these threshold legal issues is we're going to get a final judgment from the district court, probably in late December, that says permanent injunction against discontinuing these grants. And then we're going to have a few days in which we have really no choice but to fund the new grants because there will not be time to come back to this court with a new stay motion, brief it, argue it, decide it, and then have enough time before December 31st to implement the flexibility to go to the new grantees. And so in practice, we're going to be stuck, even though we started this process in April. We shouldn't be here now arguing that we... Why didn't you argue the merits and the alternative? Your Honor, we always have to make a choice because we don't have a lot of space in a stay motion, and we pick what we think are the strongest, cleanest arguments for resolution of the merits. And I think the Tucker Act is squarely controlled by the Supreme Court's ruling at NIH. So to me, that is the cleanest ground on which to resolve this appeal. And I think the analogy to Lincoln is stronger, perhaps, than Your Honor thinks. But between Lincoln and Webster, I think there's a pretty good argument that substantive, arbitrary, and capricious review is just not available for this type of allocation decision. Okay. Thank you. We'll give you a few minutes for rebuttal. Thank you. And we'll hear from Mr. McGinty now. May it please the Court, William McGinty, on behalf of the plaintiffs. The federal government has not shown that they meet the demanding standard of a stay of the district court's injunction. The district court's injunction does not require the federal government to issue payments or make grant awards to anybody. The Tucker Act does not require the federal government to issue payments or make grant awards to anybody. The Tucker Act does not apply because grant discontinuances are qualitatively different from grant terminations. Relief provided to the plaintiff's states will not require defendants to reinstate any grants. What we're asking for- Counsel, what's your response to the department's position that all of the provisions in the regulations are incorporated into the grant contracts? The- Is this not an argument based on those contracts? No, Your Honor, it's not. The notion that a dispute about whether or not an agency has violated its regulation cannot be converted into a contract claim by incorporating the regulations into the grant at issue. And I'd point the Court to the Katz v. Cisneros case. Wait, wait, wait, Counsel, let me make sure I understand what you just told me. You're saying that the United States government cannot issue a contract that requires a contractor to comply with specific provisions of federal law, either in a statute or regulation, as a condition of the contract? That can't be right. I'm not saying that, Your Honor. I'm saying that the federal government cannot incorporate a regulation into a contract such that its violation of federal law becomes a contractual matter. I'm not sure I understand what you just said. Sure. So imagine that the federal government wanted to incorporate the First Amendment into a contract, and then the federal government violated the First Amendment. That doesn't become a contractual matter as to the other party to the contract, just because the First Amendment is incorporated into the contract itself. A good case for this notion – The provision that we're talking about here is the DEI provision, is it not? Isn't that what the heart of this case is all about? The new administration has come along, and they have said, we think there has been an overemphasis on DEI – diversity, equity, and inclusion – in government contracting. We think it violates federal civil rights laws because it discriminates on the basis of race, sexual orientation, and so on in the awarding of the grants. And we want those provisions invalidated and out of the agreement. And you're telling me that the government doesn't have the right to do that? What I'm saying, Your Honor, is that the government doesn't have the right to do that in the way that it has in this case, because it violated its own regulations. That would also be in conflict with the GEPA, the General Education Provisions Act, at 20 U.S.C. 1228A, which requires applicants for these program grants to indicate how those programs are going to be accessible in their application for funding. And that's actually part of the plaintiff's case here, that what the federal government did is it looked at those applications, found all of the instances in which applicants complied with the congressional directive about what had to be in grant applications, and denied them on that basis. So is your position that once those grants were awarded for a five-year period, the government is obligated to continue funding for five years, even though the contract provides for annual performance reviews and can be terminated? I won't say at the convenience of the government, but that's really akin to the Secretary determining it's no longer in the best interest of the government to continue this contract, is it not? We're familiar with that in federal procurement. I'm not saying that the federal government has no opportunity to discontinue a grant. What I'm saying is that they need to follow their regulations when they do so. I'm also asking the court, I mean, at the district court level, we're not asking for an order for a reinstatement of any grant. What we're asking for is for the discontinuance decision to be vacated and set aside, which will remand that decision back to the Department of Education. We are not saying that any of the affected grantees here are entitled to funding without the Department of Education making a decision to continue the award under the continuation regulation at 34 CFR 75253. Is your position that the department is powerless to rescind or revise the DEI regulation as long as your grant was awarded under the prior version, the original version promulgated during the Biden administration? No, Your Honor. We're not saying that the current administration is powerless to affect their priorities. What we're saying is that the current administration needs to follow the law when it does so. And so if they want to amend the continuation regulation to allow them to do exactly what they've done here, they can go through notice and comment rulemaking to do that. What they can't do— But then wouldn't your argument be that it violates the congressional provision in the statute that you cited to me earlier? Potentially. I mean, if they want to make a rule that would violate the congressional determination, then that would be in violation of that statute. If there is a method by which they can make a discontinuation decision without taking a look at grantee performance and do that in notice and comment rulemaking, that's what they need to do. But the regulations as they stand now require the Department of Education to prioritize continuation awards. So this whole method—and I think my friend's on the other side, his argument exemplified this. What they were entirely trying to do is to remove money from the continuation grant pool and put it into the competitive grant pool. That's in direct conflict with 34 CFR 75253 subparagraph C, which says that they need to prioritize continuation awards over competitive awards. But what they were doing is the exact opposite of that. Here, right there, is a judicially manageable— You really are taking the position that the Department is obligated to continue funding your clients' grants until they change the CFR provisions, and maybe even then your argument would be, well, now it violates the statute. No, Your Honor. If the Department of Education has a basis to discontinue any of the affected grantees' awards under the discontinuation regulation, then they can do that. We're not saying that the affected grantees are entitled to funding for 2026 without a continuation award from the Department of Education. We're saying that this particular discontinuation award was made arbitrarily and capriciously and, contrary to law, should be vacated and set aside and remanded back to the agency. Is it your view that if the Department wanted to do a discontinuation based on new priorities, it would have to go through notice and comment rulemaking first, or could it do so in a reasoned explanation? They would likely need to go through notice and comment rulemaking first. Those priorities under GEPA, under the General Education Provisions Act, are required to go through notice and comment rulemaking, and the regulations right now say that discontinuances are based off of grantee performance, and so that performance metric is tied to the priorities that were in the notice of competition that were published in the Federal Register. But if they wanted to go through notice and comment... Isn't one of the performance factors compliance with the DEI provisions? In the priorities that were published for all of these grants and in compliance with the equity directive in GEPA, grantees were required to identify how they were going to make their programs equitable and accessible to various populations. And that is a performance factor, which is a condition of the contract, is it not? Potentially, Your Honor, but that's not the basis upon which these discontinuances were made. Counsel, it's not potentially. I mean, your whole case is based on the fact that you competed for and were awarded a contract based on the existing set of regulations which included this provision, and as I read the contract and the provision, evaluating the performance on an annual basis would include determining whether or not the grantee had complied with its obligations with this challenge provision. Am I missing something here? And so now the Department has said, we think that provision actually violates federal civil rights laws. So I guess my question gets back to the same one I asked you before. Is your position now that the Department of Education must continue funding a program that it believes violates federal civil rights law? I don't think that the Department of Education has ever made the charge that any of these grantees have violated federal civil rights laws. And there's particular procedural protections in the General Education Provisions Act that talk about if there are allegations of violations of civil rights laws, then the grantees are entitled to greater procedural protections over that. I thought the termination letter, though, specifically referenced the current administration's belief that these provisions do, in fact, violate the law. Well, there was the disjunctive or, Your Honor. We've never actually received a straightforward explanation about why exactly any particular grantee's grant was discontinued because they had four general ideas and then ended with a disjunctive or, indicating that they were not tailoring any of those notions to any particular grant. So there's never been a particular charge that any particular grantee has made any identifiable performance-related deficiency as the basis of the discontinuation. In fact, as I read the Department's reply brief, they say they have no basis other than the A-5 basis, not within the interest of the United States, to discontinue any of these grants. I think they make that representation in the reply brief. So let me see if I understand this. If the Department is undertaking a review of continuing grants on a budget-by-budget, year-by-year basis, they would measure performance relative to the priorities that had already been published as the basis for the grant award. But in your view, and so the Department can decide whether to continue that based on that criteria, but if the Department comes up with new priorities, that has to go through a new rule-making process before something could be discontinued. Am I tracking that correctly? Right. That's right, Your Honor, because if the other one. And that's the substance of your APA challenge. It's saying if you're going to measure us on a performance basis, it's the existing stuff that the grants were awarded from, and you can either decide whether to do it or not. Or if you're going to switch gears to new policies, new priorities, you've got to go through rule-making to publish that. And the Department didn't do either, and that's why this is an APA challenge and not a breach of contract challenge. Yes, that's exactly right, Your Honor. And, of course, the Department of Education can issue new priorities for new grants, as they've done for the competition that recently closed on October 29th. They're not bound by the Biden Administration priorities for issuing new grants and new competitive awards. But if there's a regulation that says that a grantee is evaluated based on their performance, that performance is tailored to the priorities that were published in the Federal Register back when that award was competed for originally and upon which that grantee received their award. But then why is it the performance metric is something related to a contract dispute? In other words, if a grantee says, you know what, I'm complying with my performance criteria, and now I'm being damaged because the discontinuance isn't measuring me based on that metric, why isn't that something that should be in front of the Court of Federal Claims? I think there's two basic answers to that, Your Honor, and it goes right back to the megapulse test. First, the source of rights is regulatory, not contractual. And I'd want to point the Court to Katz v. Cisneros. That is 16F3-1204, where there were regulations that were incorporated into a HUD housing developer's contract about how to calculate rents. And the Federal Circuit there said, well, that's not a contractual dispute. That's a regulatory dispute because the basis of the claim is that HUD was not applying and implementing their regulations correctly. Secondly, we're asking for prospective, injunctive, and equitable relief here. This is not like the portion of the order that was stayed in NIH because there that had to do with a retrospective reinstatement of a grant. What we're asking for here is we're asking for the Department of Education's decision about discontinuance to be vacated and set aside and remanded back to the Department of Education to make that decision anew. So I think this falls squarely within Justice Barrett's concurrence in NIH, where talking about the kinds of cases that fall within the jurisdiction of the district court includes prospective and injunctive and equitable relief because we're not asking for the entitlement to be paid, to be reinstated on the basis of a court order. We're asking for the Department of Education to exercise its discretion lawfully, within the lawful exercise of its discretion. That is the relief we're asking for. In NIH, one of the hinge points was that there was an internal agency document that was subject to APA review, at least as Justice Barrett explained in her concurrence. Is there such a document here? I think the government says no, but the district court was construing the notices as potentially being so. So what do you say? Is there something internal going on here? Yes, Your Honor. There was an internal agency document. It was very short, talking about the new agency priorities in terms of grant award and, in this case, discontinuances that were going to be implemented. I also think it's important to note that there is an agency-wide directive here regarding discontinuing things, 137 grants nationwide within the plaintiff states. This isn't something that was done on an ad hoc basis. There is a policy that is underlying this decision that we are also asking the district court on our cross-motions for summary judgment. But what is that internal agency document that you're referring to? I believe it's a letter in February. I don't have the precise record cite to it. I apologize, Your Honor. But was that before the district court in review of the preliminary injunction? Because I understood that to be after, that it came out afterwards, not as part of the preliminary injunction. It was certainly before the district court in reviewing the preliminary injunction. It was. This is the directive on department grant priorities? Yes, Your Honor. And that was something that the district court had before it when it was considering the preliminary injunction motion? Yes, Your Honor. Okay. So, counsel, were there no grants renewed in the state of Washington? There were no grants renewed in the state of Washington. And is that true with regard to the other 15 states? I do not believe that's true with regard to the other 15 states. I think there were a handful of grants that were continued. Okay. Can you turn to the reviewability question and your views as to why Lincoln might not apply, or what is your sense of this issue? Yes, Your Honor. So there's a very narrow window of agency action that's committed to agency discretion by law where there's no, truly no law to apply. And this court recently in Thacker v. Tromp relied on a structure of regulations they're having to do with the termination regulations to find that there was law to apply, even though terminations could be done similarly when they're in the best interest of the United States. So here we have a similar discontinuation regulation at 34 CFR 75253, and the structure of that regulation also provides judicially manageable standards for the court to apply in looking at the agency's exercise of discretion here, where Sub A lists the kinds of things that the secretary needs to find to continue a grant. Sub B has to do with the kinds of things that the agency considers in continuing a grant. And Sub C talks about how continuing grants take priority over competing grants. So there are judicially manageable standards here in the regulations. There's also judicially manageable standards in the agency's prior practice, because at least since 2010, what the agency has represented, and we have this in plaintiff's appendix at 154, is that the agency considers the grantee's performance in determining whether or not a continuation award should be issued, including whether or not the grant is within the best interests of the United States. So, again, this court in Thackeray v. Trump said that the court can look at an agency's past practice as a measure of judicially manageable standards. And, finally, I'd point to the General Education Provisions Act, which also provides the structure for both of these programs and provides for judicially manageable standards there. Let me ask you a final question about the balance of equities. The government had the position that by the end of this year, the budgeted funding will expire, and so, therefore, if the government doesn't get a ruling soon, it wouldn't be able to disperse to new grantees. And so why does that not present an irreparable harm situation? I think there's a few different responses to that, Your Honor. The first is, my friend on the other side concedes that we're likely to get a ruling on the merits this month. So there's that. It's important to consider that we're going to have a ruling on cross motions for summary judgment that's set for oral argument on December 11th. Second, there's a large body of case law that holds that courts have the ability to toll lapses in appropriations where it's necessary to preserve the status quo or give effective relief. Counsel, how can you square that with the answer that the government is continuing to fund all these grants through the end of the year? How are you going to be harmed if we modify the preliminary injunction and allow the government to commit the other $200 million before, I don't know, it gets returned to the Treasury or whatever happens to it if it's not spent by the end of the month? I see my time has expired. Because it seems to me that by the time the district court decides, it's going to be too late with regard to the $200 million. Please finish. So the answer to that, Your Honor, is we're asking for the Department of Education's decision on discontinuance to be vacated and set aside so that the Department of Education can make that decision anew in the lawful exercise of its authority. If the money for 2026 has already been appropriated, has already been obligated, excuse me, then that decision becomes futile. There's no reason for the Department of Education to make the decision about whether to issue continuation awards because it's already spent all of that money on competitive awards, which is in direct violation, direct contravention of its own regulation. So the reason is in order to have effective… I'm not sure that makes sense, Counsel, because if it has to be spent, or maybe it's just committed. You may be right, but if they're continuing to pay on the grants that they ordered terminated, why can't they spend the other $200 million that would otherwise be earmarked for new grantees? So they obligate money from the 2025 appropriation to be spent by educational agencies in 2026. The money that's being pulled down by the affected grantees right now was obligated in late 2024, and so…  So you're saying if they spend the $200 million, then there won't be any money available to continue their work in 2026. That's exactly right. Okay. All right. Thank you. Any other questions? No. Thank you. Mr. Rolf, we'll give you four minutes for rebuttal. Thank you, Your Honor. So first, I didn't hear anything that distinguishes NIH. The government ended a contract. The plaintiffs think it was arbitrary and capricious that we ended the contract, and they want to vacate the decision to end the contract. Those are the facts of NIH. Those are the facts here. The Supreme Court said that is covered by the Tucker Act. It can't be brought in federal district court. Justice Barrett's concurrence does not support them at all. Justice Barrett said, yes, if there's a guidance document, you can challenge that, but if you win, that doesn't revive any of the grants that were terminated. You have to separate out a challenge to a guidance document from a challenge to a grant termination decision. If they had wanted to enjoin the directive from February, they could have done that, but that's not what the injunction does. The injunction doesn't set aside the February directive. The injunction sets aside the 220 discontinuation decisions, or however many of them are from the plaintiff states, and undoes the decision to terminate those awards. So that is exactly covered by Justice Barrett's controlling concurrence that says you can't do that in federal district court. On the point about the regulations being incorporated into the contract, I'd like to cite to the court Ingersoll Rand from the D.C. Circuit, which is from the 80s, and Climate United from the D.C. Circuit, which is from this year, both of which said if the regulations deal with when and how the agency can terminate a contract, and they are incorporated into the contract, you can't say I'm only bringing a regulatory claim, and therefore I can evade the Tucker Act. It's still a contract claim. My friend on the other side cited one case that he said goes the other way, Katz. I read it this afternoon. It doesn't. There was no contract with the government in that case. It was a private contract that referenced a regulation. Well, of course you can't sue the government for breach of a private contract. The cases that I'm citing are cases involving contracts with the government that included and cross-referenced regulatory provisions, and if you claim a breach of those regulatory provisions, you are just by its nature claiming a violation of the contract, and that has to be pursued in the claims court. I want to address the practical impact because counsel said, oh, we're not asking for reinstatement. I think that's a little bit disingenuous because we do have a December 31st deadline. I don't know what they want us to do other than fund their contracts for 2026. I assume they don't want us to let the money sit and expire at the end of the year. He suggested that courts could toll that lapse. We do not think courts have the power under the Constitution to extend an appropriation that Congress has set to expire. There's cases that support our position on that, but it's never been broached in this case. If we don't get an order that stays this injunction, I don't see how the department will have any real choice but to commit these funds to the awards that they determined don't advance the interests of the federal government. There is no basis in law to require the agency to do that. In terms of the judicially manageable standards, counsel said, oh, well, there's this regulation and that regulation. I urge the court to look at the preliminary injunction decision. The district court did not find a violation of any of the regulations that counsel just mentioned. If that were their claim, then I wouldn't be raising a committed to agency discretion by law argument. The only argument that the district court said was likely to succeed was that we didn't give a long enough explanation for why we decided that it wasn't in the best interest of the United States. In our positions, we don't have to give that explanation because it's not subject to judicial review under the APA exclusion for matters that are committed to agency discretion by law. So, Your Honor, if the court has no further questions, we do think we need a stay here. Under the Supreme Court precedent that we've cited. And so we would ask the court to issue that order as soon as it can. Thank you. Counsel, thank you both for your helpful arguments. The matter will stand submitted and court is adjourned.
judges: TALLMAN, BYBEE, SANCHEZ